Van Voorhis, J.
These are cross appeals by landlord and tenants. The subject real property is an apartment house at 270 *567 Riverside Drive, in the borough of Manhattan, city of New York. Tiie action is by tenants for a mandatory injunction to compel the landlord to provide or maintain various services in the building, and for damages by reason of the alleged discontinuance of these services. With the possible exception of the allegations contained in paragraphs 21 to 23 of the complaint, which are hereafter discussed, the tenants’ right to the relief demanded is based entirely upon the Federal Housing and Rent Acts of 1947 and 1949 (U. S. Code, tit. 50, Appendix, § 1881 et seq.). Before the commencement of the action no application was made to the Federal Housing Expediter for any of the relief demanded in the complaint. For that reason the trial court denied recovery for damages by reason of the discontinuance of services, without prejudice to applications to the Housing Expediter to determine the value of such services, but granted a mandatory injunction compelling the landlord to provide a uniformed attendant continuously in the lobby of the apartment house, to maintain a manual operator upon the service elevator, and to provide for the receipt, acceptance and transmission to the tenants of mail and packages sent to them at the apartment house. These services were in operation on March 1,1943, which was the date as of which maximum rents were to be fixed pursuant to the Federal Emergency Price Control Act of 1942 (U. S. Code, tit. 50, Appendix, § 901 et seq.). The leases of the various apartments contained no covenant by the landlord to supply these services. Other injunctive relief applied for by plaintiffs was denied by the trial court, such as to compel maintenance of manual operators on passenger elevators. No questions need be considered due to the denial of such relief, since the tenants have not appealed from that part of the judgment. The tenants have appealed, however, from so much of the judgment as denies recovery of damages by them. The landlord has appealed from the granting of the injunctive relief which was allowed by the trial court, and likewise from the award of $1,000 as counsel fee to plaintiffs’ attorney.
Insofar as this action is based directly upon violations of the Federal Housing and Rent Act of 1947 and 1949 into which have been merged landlord and tenant provisions of the Emergency Price Control Act of 1942, this action cannot be maintained in the absence of any previous application to the Housing Expediter. In enacting this legislation, the Congress of the United States evidently intended to confer administrative duties pertaining to the housing situation upon the Federal Housing Expediter. It was not intended to confer upon the courts, and particularly the *568 State courts (see Wasservogel v. Meyerowits, 300 N. Y. 125), the duties of the Housing Expediter arising out of these Federal statutes, and the jurisdiction of courts with respect to such matters is limited to legal steps which may be taken after the Housing Expediter has acted. The courts are not to exercise the judgment of the Expediter. This is clear from an examination of these statutes and the regulations adopted thereunder.
Subdivision (b) of section 206 of the Housing and Bent Act of 1947, as amended by section 205 of the Housing and Bent Act of 1949 (U. S. Code, tit. 50, Appendix, § 1896; 81st Cong., 1st Sess., ch. 42, Public Law, 31), following the previous acts, provides: “ Whenever in the judgment of the Housing Expediter any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of this Act, or any regulation or order issued thereunder, the United States may make application to any Federal, State, or Territorial court of competent jurisdiction for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, and upon a,showing that such person has engaged or is about to engage in any such acts or practices a permanent or temporary injunction, restraining order, or other order shall be granted without bond.”
In Matter of Kingswood Management Corp. (Salzman), (272 App. Div. 328), a rent control case, we applied the “ familiar rule in the construction of statutes that where a new right is created, or a new duty imposed by statute, if a remedy be given by the same statute for its violation or non-performance, the remedy given is exclusive ”, citing Seeley v. Tioga County Patrons Fire Relief Assn. (165 App. Div. 685, 689), and City of Rochester v. Campbell (123 N. Y. 405, 414).
The rule may perhaps be otherwise where the remedy by injunction is sought to compel compliance with a statute which is merely an embodiment of the common law, defining but not creating the substantive right upon which relief depends (cf. §§ 340-343 of the G-eneral Business Law respecting monopoly and restraint of trade). Neither is the question presented concerning acts by a landlord amounting to constructive eviction.
The underlying thought of the Housing and Rent Acts, in this regard, would appear to be that where services are discontinued in violation of valid regulations, application should be made by the tenants to the Housing Expediter for a prompt reduction in the rent which may be charged, which could well be drastic if important services have been suspended, and that this would *569 ordinarily result in the restoration of such services or reduction of rent without the necessity of congesting the calendars of the courts, which were not constituted primarily to handle controversies of this character. The power of the Expediter to sue for injunctive relief is given to him for use if in his judgment it is required, but the decisions hold that his power to do so is exclusive, and that injunction actions cannot be brought by tenants to enforce rights which arise out of those statutes. Thus in Hock v. 250 Northern Ave. Corp. (142 F. 2d 435), it was held that under section 205 of the Emergency Price Control Act of 1942 (U. S. Code, tit. 50, Appendix, § 925), the administrator of the Office of Price Administration alone was empowered to sue for injunctive relief to restrain violation of the rent regulations. The opinion concludes by stating: “ Thus the only provision in section 205 conferring jurisdiction of a private civil action is limited to an action for sums paid in excess of the maximum rent or the maximum commodity prices allowed by the O.P.A. regulations. The present action is not of this character. Consequently the district court lacked jurisdiction, and dismissal should have gone on that ground rather than on the merits.”
In Luftman v. Boss (75 F. Supp. 627), the court said:
“The controversy revolves around the construction of the Housing and Bent Act of 1947, Public Law 129, 80th Congress, 50 U. S. C. A. Appendix, § 1881 et seq. That law, however, does not include in its scheme of enforcement the remedy of injunctive relief at the instance of a tenant. Only the Housing Expediter is, by the statute, authorized to apply for an injunction; § 206 (h). Tenants are given a remedy by way of treble damage suits; § 205.
“ Under the legislation which preceded the Housing and Bent Control Act, Emergency Price Control Act of 1942, § 205, 50 U. S. C. A. Appendix, § 925, my search has uncovered no case wherein a tenant has successfully secured the benefits of rent control by injunction procured at his instance. The contrary has been held. Land v. Bass, 5 Cir., 1944, 142 F. 2d 6; certiorari denied 1944, 323 U. S. 719, 65 S. Ct. 49, 89 L. Ed. 578; Hock v. 250 Northern Ave. Corporation, 2 Cir., 1944,142 F. 2d 435; In re Seitz, D. C., E. D. N. Y. 1945, 60 F. Supp. 462.” To the same effect is Fox v. 34 Hillside Realty Corp. (79 F. Supp. 832).
It follows that injunctive relief based on these statutes must be denied to these plaintiffs.
The trial court correctly declined to allow recovery of damages without a determination by the Expediter of the value of the services that have been discontinued. Under the Federal *570 Housing and Rent Acts of 1947 and 1949, regulations were issued characterizing a reduction in services which were in operation on the maximum rent date (March 1, 1943) as constituting an acceptance by the landlord of rent higher than the maximum rent. Under section 204, as currently amended, a landlord who receives excess rent is liable to restore to the tenant the amount of the overcharge as “liquidated damages ”, or three times such amount if the overcharge was willful or negligent. The question arises in cases such as this, whether the value of the services •which have been discontinued is to be determined in the first instance by the Federal Housing Expediter or by the court. The regulations provide that “ The Expediter at any time, on his own initiative or on application of the tenant, may order a decrease of the maximum rent otherwise allowable ” on the ground that “ There has been a decrease in the minimum services, furniture, furnishings or equipment required by § 825.3 since the date or order determining the maximum rent # * * ” (Controlled Housing Rent Regulation of 1947, as amd., § 5, subd. [c], par. [3]; Code Fed. Reg. [1949 ed.], tit. 24, § 825.5, subd. [c], par. [3]). See opinion by Loreto, J., in Bronx Square Realty Corp. v. Wurnan (194 Misc. 766). In the case just cited in the Municipal Court, and in Penner v. Gellor (193 Misc. 821 [App. Term, 2d Dept.]), it was held, as stated in the latter decision: ‘ ‘ Where there is a decrease in the minimum services to which the tenant is entitled, his remedy is by appropriate application to the expediter under paragraph (3) of subdivision (b) and paragraph (3) of subdivision (c) of section 5 of the rent regulation for a corresponding reduction of the maximum rent. There can be no recovery for penalties or damages in the absence of a refund order. (Cf. Woods v. Stone, 333 U.S.472.)”
It is clear that the value of services that have been discontinued by the landlord must first be determined by the Housing Expediter. After obtaining such a reduction, the tenants may then sue in a court of competent jurisdiction under section 204 of the Housing and Rent Act of 1949 for liquidated damages based on the overcharge.
It remains to consider whether there are rights arising out of contract which the tenants are entitled to enforce in this action. At the trial, plaintiffs’ counsel stated that this action “ is not predicated on any contractual relationship, but it is predicated on a statutory responsibility which this defendant had.” Nevertheless, plaintiffs’ counsel appears to have revised these views, for in this court he has stated that para *571 graphs 21 to 23 of the complaint purport to allege a contractual obligation on the part of defendant to some of the plaintiffs. These paragraphs allege that written leases were executed by certain plaintiffs for rents 15% higher than the then existing maximum rent, under authority of the Housing and Bent Act of 1947, as amended, subject to the consent of the Housing Expediter; that each of said leases was approved by the area rent director pursuant to said legislation, on condition that the landlord obligate itself to supply the same services in the apartment house that were required by the said statute, and the regulations then in force promulgated by the Federal Office of Housing Expediter. These, it is said, purport to be the same services which were in actual operation in this apartment house on the maximum rent date, March 1, 1943. The complaint further alleges, in effect, that the landlord agreed to this condition by charging the 15% increase in rents, and that this created a contractual promise by the landlord to the Housing Expediter to maintain those services, enforcible by the tenants as third-party beneficiaries. Attention was called on the argument to Form D-92 of the Office of Housing Expediter, that landlords are required to sign under the regulations in order to obtain approval of such rent increases, which states that during the terms of leases at such increased rentals, “ the landlord shall continue to provide substantially the same services, furnishings, and equipment as those included in the maximum rent in item 4.” Item 4 states that “ This maximum rent includes the registered services, furnishings, and equipment.” It is contended by counsel for plaintiff tenants that the services thus referred to are those which wore in effect on the maximum rent date, as it is described in the act, to wit, March 1, 1943.
We are of opinion that there is sufficient basis for this contention, which has some foundation in the allegations of the complaint and in the record, to justify granting a new trial in order that the facts on which it is based may be developed more fully than was done at the trial. The new leases providing for the 15% rent increases are not in evidence, neither does it appear whether they purport expressly to dispense with any services in operation on March 1, 1943, whether they "were approved b'~ the area rent director, nor what would be the effect of any divergencies between the leases and the requirements of Form D-92. Other questions of fact or of law may be involved in such a contention. These suits have not been tried on this theory, and we express no opinion concerning its sufficiency until the facts on which it is based are more fully presented.
*572 The circumstance, as pointed out in the dissenting opinion, that various services were in operation in this apartment house on March 1, 1943, or when leases were entered into, has been held by the Court of Appeals not to be sufficient in itself to establish a contractual obligation by the landlord to maintain them (Fogelson v. Rackfay Constr. Co., 300 N. Y. 334). Although it is not entirely clear from the tenants’ complaint in this action that they intended to allege that the landlord contracted to maintain all services in effect on March 1, 1943, by accepting an increase in rent and signing the Housing Expediter’s Form D-92 as a condition to the approval of such increase, we have so interpreted it by a liberal construction. This point was not urged nor passed upon below, however, as above stated. The record of the trial does not present the facts on which the conclusion of the dissenting Justices is based, that an express agreement was made through the area rent office of the Housing Expediter to continue to maintain these services. The scope and the coverage of Form D-92 is not definite from the form itself, and was left to inference upon the trial. Without a further showing to be made upon a new trial, we cannot tell what services were contracted for under Form D-92.
The court is unanimously of opinion that there was no authority for the allowance of a counsel fee of $1,000 to plaintiffs’ attorney.
It should further be stated that we do not rule upon whether the city housing rent commission possesses powers under State or local law corresponding to those of the Housing Expediter under the Federal Housing and Rent Acts.
The judgment appealed from should be reversed and a new trial granted.