Al FRIEDMAN, Appellant,

v.

INTERNATIONAL ASSOCIATION OF MACHINISTS et al., Appellees.

No. 12238.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 10, 1954.

Decided Feb. 17, 1955.

Petition for Rehearing Denied March 11, 1955.

Mr. Victor B. Harris, of the bar of the Supreme Court of Missouri, St. Louis, Mo., *pro hac vice*, by special leave of Court, with whom Mr. Seymour Krieger, Washington, D. C., was on the brief, for appellant.

---

Mr. Edward J. Hickey, Jr., Washington, D. C., with whom Messrs. Clarence M. Mulholland and William G. Mahoney, Washington, D. C., were on the brief, for appellees.

Before FAHY, WASHINGTON and DANAHER, Circuit Judges.

FAHY, Circuit Judge.

The question is whether the District Court erred in determining that the value of the matter in controversy was not shown by competent evidence to exceed $3,000.00, resulting in dismissal of the complaint for lack of jurisdiction.

Appellant, plaintiff below, filed his complaint to enjoin appellees from carrying out an order expelling him from the International Association of Machinists and to require his reinstatement as a member in good standing of this Union. He alleges that the Executive Council of the Union sustained his expulsion, whereupon he appealed to its Grand Lodge Convention which adopted a report that at all times material he was a member of the Communist Party, advocated, encouraged and gave support to Communism, and so merited expulsion. The complaint points out that a trial committee of Lodge No. 688 to which appellant belonged[1] had reached a different conclusion, finding him not guilty of such charges. The complaint then characterizes the procedures eventuating in the expulsion order as illegal because not supported by substantial evidence and in certain respects violative of the constitution of the Union.

■■■ If the matter in controversy exceeds the value of $3,000.00, exclusive of interest and costs, the jurisdictional requirements of §§ 1331 and 1332 of the Judicial Code, 28 U.S.C. §§ 1331, 1332 (1952), 62 Stat. 930, are satisfied insofar as the amount involved is concerned. Such value also brings a case within the court's jurisdictional reach under the local Code, § 11–306, D.C. Code 1951.[2]

Describing appellant's Union membership as a property right of a value in excess of $3,000.00 the complaint alleges that he is a tool and diemaker in a highly skilled trade almost completely organized and controlled by the Union; that as a member of the Union his family will be entitled upon his death to valuable death benefits; that he is entitled to valuable strike benefits in the event of a strike at his place of work; that he is employed by Anheuser-Busch, Inc., which has a contract with the Union requiring such employees as himself to be members; and that if the expulsion order stands he will lose his job, will be unable to obtain employment in his trade, will lose strike benefits, and his family will lose death benefits.

Appellant's deposition taken on the jurisdictional question, without factual dispute in the record, fixes his wages at Anheuser-Busch as $137.25 per week. He deposed that should he lose his Union membership he would soon also lose his job and probably would be obliged to work at a wage scale of about $60.00 per week for semi-skilled or unskilled work or accept spasmodic tool-and-die work in small, non-unionized "alley shops" without fringe pay benefits. On the other hand if he can remain in good standing in the Union steady employment at the higher wage appears likely.

1. The complaint alleges that appellant was a member of Tool and Diemakers Lodge 688 of the International Association of Machinists. The Lodge is located at St. Louis, where he resides.

2. The exclusive jurisdiction carved out for the Municipal Court of the District of Columbia by § 11–755, D.C.Code 1951, does not include civil actions in which the claimed value of personal property, or damages claimed, exceeds the sum stated.

As bearing on the relation of the amount involved to the question of jurisdiction see Klepinger v. Rhodes, 78 U.S.App.D.C. 340, 140 F.2d 697, certiorari denied, 322 U.S. 734, 64 S.Ct. 1047, 88 L.Ed. 1568; Miller v. Woods, 87 U.S. App.D.C. 324, 185 F.2d 499; Rowe v. Nolan Finance Co., 79 U.S.App.D.C. 35, 142 F.2d 93.

The union shop contract between Anheuser-Busch and the Union provides in substance that an employee such as appellant shall remain a member in good standing in the Machinists Union during the term of the agreement.

It is arguable that notwithstanding this contract appellant would not be discharged if expelled from the Union provided he continued to tender dues to it since under Section 8(a) (3) of the Labor Management Relations Act of 1947[3] it is an unfair labor practice to discharge an employee for nonmembership in a union if the employer has reason to believe his membership was terminated for reasons other than failure to tender dues and initiation fees. Radio Officers' Union of Commercial Telegraphers Union, A. F. L. v. National Labor Board, 347 U.S. 17, 40-42, 74 S.Ct. 323, 98 L.Ed. 455; National Labor Relations Bd. v. Gottfried Baking Co., 2 Cir., 210 F.2d 772, 784; National Labor Relations Bd. v. Philadelphia Iron Works, 3 Cir., 211 F.2d 937, 940-941. But the probabilities of retention in his job are against appellant unless he can clear himself of the Communist charges; for the courts might not compel reinstatement of an employee discharged after expulsion from a union for conduct such as is attributed to appellant. See, for example, National Labor Relations Board v. Kingston Cake Co., 3 Cir., 206 F.2d 604. And apart from the effect of nonmembership in the Union, job insecurity would attach to the likelihood of his presence in the shop becoming a source of friction. The threats to the earning capacity of a highly skilled workman which inhere in these hypotheses are serious enough to warrant the conclusion that damages would be reasonably certain to result from appellant's expulsion from the Union on charges tying him to Communist activity. The monetary loss from such expulsion is readily translatable into an amount exceeding $3,000.00. Appellant's deposition on the jurisdictional issue places his age at approximately 36 years. His normal life expectancy accordingly is 30 years more or less.[4] Thus there is probably before him a number of working years. Should his wage scale of about $137 a week be halved by his expulsion from the Union, as from his testimony also seems probable, his loss would soon exceed $3,000.00. See Brotherhood of Locomotive Firemen & Enginemen v. Pinkston, 293 U.S. 96, 55 S. Ct. 1, 79 L.Ed. 219. Absolute certainty of this value is not essential. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-289, 58 S.Ct. 586, 82 L.Ed. 845. Present probability that damages will exceed that sum is enough. Food Fair Stores v. Food Fair, 1 Cir., 177 F.2d 177, 184. See, also, Nord v. Griffin, 7 Cir., 86 F.2d 481, certiorari denied, 300 U.S. 673, 57 S.Ct. 612, 81 L.Ed. 879.

We are accordingly of the opinion that the facts adduced on the value of the matter in controversy bring the case within the jurisdiction of the District Court, enabling it to decide such justi-

3. 61 Stat. 136, 141, as amended, 29 U.S.C.A. § 158(a) (3) (1952), which provides as follows: " * * * *Provided further*, That no employer shall justify any discrimination against an employee for nonmembership in a labor organization * * * (B) if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membershp * * *."

4. The United States Life Table, 1939-41, based on the 1940 census, lists the life expectancy of a 36 year old male as 32.94 years (U. S. Life Tables and Actuarial Tables 1939-41, Thomas N.E. Greville (Govt. Print. Office 1946) ); the American Men Ultimate Table of Mortality (1900-1915) lists 32.67 years; the 1941 Commissioners Standard Ordinary Mortality Table (1930-1940) lists 32.59 years as the life expectancy at 36, without regard to sex; the 1937 Standard Annuity (1931-1936) lists 36.49 years life expectancy for 36 year old males. See 4 Richards, Law of Insurance, App. E 1, p. 2016-7 (1952).

ciable questions between the parties as it may find are raised by the pleadings.[5]

Reversed and remanded.

---

5. Union membership with death and strike benefits has been held to be a valuable property right which equity will protect. Burke v. Monumental Div. No. 52, B. of L. Engineers, D.C.D.Md., 273 F. 707; Local Union No. 57, etc. v. Boyd, 245 Ala. 227, 16 So.2d 705; Heasley v. Operative P. & C. F. I. Ass'n, 324 Pa. 257, 188 A. 206; Abdon v. Wallace, 95 Ind.App. 604, 165 N.E. 68; 168 A.L.R. 1479 note.